Hi, Mr. Harris. How are you? How are you? Good. How much time do you plan to request for rebuttal? I'll probably do four minutes. Four minutes? Yeah. Okay. Have you been with us before? I've not. Okay. I'll go over a few things with you, Mr. Shaw. Oh, I'm sorry. Why don't I say three minutes? That's fine. You want three? We'll do three. That's fine. And if you, the bad thing is if you change your mind while you're up there, there's no way to get it back. You don't mean if you leave time? Yeah, yeah. Okay. Well, I'm Beverly Harris. Hi, great to meet you. Nice to meet you. Hi. Hi, Mr. Shaw. Good to meet you. Have you been here before? No. Okay, good. Okay. When you begin your argument, a green light will come on. When you have one minute left until your allotted time, a yellow light will come on, like you reserved three minutes. So after 11 minutes, the yellow light will come on. Okay. And that tells you you have one minute left, and then a red light will come on. However, if the judges are asking questions or both of you are speaking, just continue, and then Chief Judge Cole will let you know at that point when you should cease your argument. Great. Okay. Any questions? Okay. And you can adjust this, Mr. Harris, if you need to. Okay, great. And then, as tall as he is, you may have to readjust it. So, you can't think of any questions? No. And how did you guys get out of Washington? It was, well, Monday was the first day that the airport was open. Oh, okay. It just happened to be. You lucked out, yeah. Oh, my gosh. The timing was okay for me. Oh, my gosh. So is the weather warmer at least? Is everything melting? Yeah, I think so. It's a lot of snow, and I guess, I'm sure like in any other northern city, they would have cleared all the snow by now, but I think it just takes a lot longer. If it happened here, we'd be close. Thank you. You're welcome. Thanks. Okay. Okay. Okay. Okay. Thank you. You're welcome. Okay.  I've got to talk to him about fixing it though. Everybody wants to read stuff and you can't get in. No, you go like this and you say continue. Oh, okay. And then you've got to log in. Can you log in as you? I did. Oh. And it's not letting me this time. What? If you go to a different website, other than the Eastern District of Kentucky, it might let you. It's just that one is really weird, even downstairs. Oh. So, yeah. Okay. I can't. I'm gonna have to get a new one.  So, you're going to log in as you do that.  Okay. All rise. The judges of the United States Court of Appeals. Hear ye, hear ye. The United States Court of Appeals for the Sixth Circuit is now in session. All persons having business before this honorable court, draw near, give attention, and ye shall be heard. God save the United States and this honorable court. Please be seated. Well, good afternoon. You may call the case. 145451 Stephen Koprowski v. Karen Baker, et al. Arguments not to exceed 15 minutes per side. Mr. Harris for appellant. May it please the court. Good afternoon, Your Honors. In Carlson v. Green, the Supreme Court held that a prisoner can bring a claim for damages against federal prison officials to enforce the Eighth Amendment. The court reached that holding notwithstanding the availability of an alternative remedy under the Federal Tort Claims Act. As three other circuits have correctly recognized, there's no basis for a different result under the Inmate Accident Compensation Act. I'd like to begin with the question of deterrence. And deterrence was central to the Supreme Court's holding in Carlson, and it remains central to the Bivens inquiry under more recent precedents. The court has repeatedly reiterated that the purpose of a Bivens claim is, quote, to deter individual federal officers from committing constitutional violations. The court's also repeatedly stated that it's, quote, axiomatic that the threat of money damages is insufficient, that the threat of money damages has that deterrent effect. But the IACA does nothing to deter violations of the Eighth Amendment. The threat of suit against the United States does nothing to deter the unconstitutional acts of individual officers. Well, you do have this administrative process that can be pursued under the IACA, where I suppose conduct of prison officials could be exposed to some extent, perhaps later on some sort of injunctive relief.  So first of all, the Supreme Court itself has looked at those exact issues in the McCarthy v. Madigan case and said that that injunctive process is not an equally effective substitute for a damages remedy. The U.S. Supreme Court has also looked at that statute and said it's exclusive. Has looked at? The IACA and DEMCO and said it's exclusive, which was not true with the FTCA and Carlson. Right, so I think DEMCO, so first of all, DEMCO obviously, the most superficial point is DEMCO couldn't have been addressing a Bivens claim because Bivens was still 10 years in the future. But I actually think there's an even more substantive reason. Let's imagine Carlson has all three. It has IACA, FTCA, and Bivens. Under your theory of the case, the FTCA claim gets knocked out, even though that's an express statutory claim, and it gets knocked out by the exclusivity of the IACA, and yet the implied constitutional claim stands? That's just bizarre. Well, I don't, so I think when you compare the IACA and the FTCA, which was what the court was doing in DEMCO, I actually don't think it's bizarre at all because the whole purpose of the FTCA is to go after negligence towards accidents, mishaps, sort of common negligence, for lack of a better term. And so you had the IACA, which is also sounding very much in that type of tort, and so I think all the court was holding in DEMCO was that when you have a general negligence remedy and a more specific negligence remedy, we're going to follow the more specific one. What about the reality that in Stanley, the court says the times you can't bring in FTCA claim are the same as the times you can't bring in Bivens claim? So that's what they say in Stanley, and so it seems pretty obvious to me that proves per DEMCO you can't bring the FTCA claim given the IACA. If the times you can't bring the FTCA claim are the same as when you can't bring a Bivens claim, end of case. I mean, if you want to ask for an a fortiori approach to this case, that would be it. Right, so I do think, but I think when especially looking at sort of, as the Seventh Circuit emphasized in Magola, I do think there's an apples and oranges approach to the whole theory. It's just the whole theory of a Bivens claim is just a league apart from what's happening in one of these garden variety negligence tort suits. It's deliberate indifference. It is knowing that the prisoner has a serious medical need, but yet doing nothing to resolve that need. And so whereas the IACA may be able to displace a common... I mean, the point of all workers' compensation systems is it's exclusive. So under what you're proposing, you could get your relief through the workers' compensation system, you get whatever it is, and instead of the quo that you get with the quid pro quo of that being it for the employer, you're saying you now can seek more damages for the constitutional claim. I mean, that defeats the whole point of a workers' compensation system. Right, so a couple points on that, Your Honor. So I think, so workers' compensation systems vary at both the state and federal level, but in a lot of workers' compensation systems, there are exceptions for intentional torts. So I think even under the FECA federal system, some courts have held that if you're going after a co-employee, you can still bring a Bivens claim against that co-employee for an intentional tort, despite the existence... So DEMCO has been overruled in terms of saying it's exclusive? That this statute is exclusive? You may be right that they're different workers' compensation statutes, but we have DEMCO. Right, and DEMCO would foreclose an attempt by Mr. Kaprowski to bring an FTCA claim arising out of his work accident or his medical care following that work accident. But again, I think it's just apples and oranges to get to the Bivens claim. And again, I think the Seventh Circuit held just a few months ago that even in the context of FECA, that a Bivens claim was available against a co-worker, despite the existence of the FECA remedy for work-related torts. Well, I mean, that's the same Seventh Circuit that you're relying on in its interpretation of Carlson, right? Right, and I don't think that's at all inconsistent with Carlson. No, no, no, I'm saying it's not surprising that's a helpful circuit to you. I mean, yeah, yeah. Yeah, fair enough. Tell me this. You know, one thing that's funny to me, I mean, we would all agree that the court's approach to implied rights of actions, whether statutory or constitutional, is different today than it was. Now, we're still stuck with holdings in Carlson, but one part of Carlson, which is the part that Justice Powell and Justice Stewart didn't agree with, that's why they concurred in the judgment, was this language that Congress has to show in order to defeat a Bivens remedy. It says, Congress has provided an alternative remedy which it explicitly declared to be a substitute for recovery directly under the Constitution. And that language seems to have just fallen out of the court's cases. I realize they still respect the Carlson holding. I don't think the government's challenging that holding. But that's a presumption-shifting language. And so I assume you don't think we're bound by that language anymore because I haven't seen it used in any of the post-1980 cases. Right, so I think it's fair to say that that clear statement rule may have fallen away. But that said, I think Wilkie— I'd call it a presumption. I'd say there was a presumption in favor and now there's a presumption against. Well, but I do think even Wilkie, which the Appellees quote extensively for the proposition that the test has changed, says that it was following a familiar sequence. And so I think it's helpful to look at the most recent Eighth Amendment Bivens case, which is Minechi, which is very helpful. That's 2012. And the court ultimately did not allow a Bivens claim against private officials working at federal prisons. But critically, the court was looking at deterrence and compensation. And the court said, is the alternative state law going to provide, quote, roughly similar incentives to comply with the Eighth Amendment? And is there going to be, quote, roughly similar compensation? And the court ultimately concluded that that state law remedy was as good or better than the Bivens remedy. But I think what the court was doing in Minechi is not all that different from what the court was doing in Carlson. How do you distinguish Bush and Schweiker, which the Supreme Court obviously is subsequent to Carlson. And it says that, look, you don't have to get monetary relief for constitutional claims. Right. So Bush, I think, is the most straightforward one. Because I think in that case, in the employee grievance process, there was actually a way to raise your First Amendment challenges. So I think Bush provided an explicit forum to raise the constitutional claim. Schweiker, I think, the reason that case is so different is because the problem of people's benefits being terminated early, Congress was absolutely 100 percent aware of that problem and was legislating along the way. And I think the court used the words frequent and intense congressional attention. And so unlike this case where we have this one sentence statute that was enacted in 1930 and amended in 1960, in Schweiker you had a situation where Congress was sort of actually working on this problem in real time. And so I think the court was not inclined to overrule that by adding a Bivens remedy on top of what Congress was doing. If I can quickly sort of. In the Seventh Circuit case that is really the key court of appeals case we're dealing with, because the others just seem to follow its reasoning, they're not nearly as thoughtful. The Seventh Circuit case does seem to rely on this presumption language from Carlson because it's a 1990s case. I mean, the world hadn't changed as much as it has by now. So why isn't that reason enough for us? I mean, I don't see any chance that the U.S. Supreme Court affirms that decision based on its reasoning. I mean, it's using language that they are conspicuously not using. Right. So I would say, you know, regardless of sort of regardless of how. And I think the language you're referring to would apply only to sort of the text based argument. So, you know, whether Congress needs to explicitly foreclose it or explicitly allow it. But I do think they seem to they got their explicitness one way or the other from legislative history. So it seems to be legislative history or text. I'm not sure. Right. But one way or another, the court still has to do an inquiry into is this an effective, adequate remedy? And I think for all the reasons we go through in our brief, I think both substantively and procedurally, the IACA is not even in the ballpark of a Bivens remedy. What injuries are not covered? What injuries that your client is complaining about are not covered by the IACA? I thought they were all covered. Well, I mean, he he's saying, I mean, he according to his complaint, he was in agonizing pain for years because he never received the medical treatment that he should have gotten. And he won't recover for that under under the IACA. And I think I thought the IACA and the regs in our cases made it clear that you recover for everything, including injuries caused by negligent treatment after the original injury. I thought that was pretty clear. Right. So. So I think you're just making the amount of money he's going to get. Is that the point you're making? Well, it's the amount of money, but I don't I don't think there's any to the extent he could show a physical disability that was aggravated by the medical malpractice or medical negligence. I think that might be recoverable under the IACA, but he would recover nothing independently for the pain and suffering that he endured for several years. I'm sorry. Go ahead. No, I don't want to interrupt the question. So it seems to me, I guess I want to be clear, is really the difference in terms of the claim or the injury. I don't know. Did you reserve any rebuttal time? I have three minutes. OK. And we can extend your initial time here a little bit. So as I understand the point you're making, really the claim that is above the IACA claim is really a claim that is for something more than negligence. It is for some sort of a constitutional tort, which may be torturous conduct or something that's beyond the mere negligence of prison officials. Is that where there is a that a significant distinction? So so that's a really important point, because I think what that point. So it's very well established that negligence alone, so sort of simple negligence, simple medical malpractice does not constitute a Bivens claim. So I think that shows a couple of things. First of all, it shows that the sky won't fall as the Appellee's claim if this court recognizes this claim, because in the vast majority of work related accidents, you're not going to have anything that even comes close to the level of a Bivens claim. So I think that shows that we're actually talking about a pretty narrow slice of cases. But I'm sorry. So there is either alleged or could be injury that is above and beyond that caused by negligence of prison officials. That's the core of the Bivens claim. Right. Someone was aware of a serious medical risk or a serious medical need and disregarded that despite that knowledge, which is a very hard standard to meet. And now I think the other part of your question. But there's a tradeoff, right? I mean, he also can recover for a, quote, Bivens claim that would fail. Right. Because it's no fault. Right. I mean, so you could have an injury. You could recover under the IACA in a claim that would never see the light of day under Bivens because of qualified immunity or whatever. I mean, that's why it's exclusive. That's the whole point of the tradeoff. You win when you shouldn't and you don't get some things when you should. But that's why it's a tradeoff for both sides. Each side is getting something in the abstract even though there are individuals like your client for whom it's a loss as to them. For every client like that, there's one who's getting something they wouldn't get under Bivens or anything that required, say, fault. Right. Although I think that question just underscores that all Bivens is going to be is sort of the emergency backstop in an extremely egregious case where there's something looking like intentional violations of conduct. There's the emergency backstop in the other direction. Can the government ever come in and say, well, we're not giving to you. You were just stupid. That was all your fault. There's no exception in that direction. That's the point of exclusivity. It's tough at the extremes for both sides of the bargain. Right. Although I think so in trying to sort of harmonize the Supreme Court's cases, I think one thing that does come through is that the Eighth Amendment is one of the very few provisions where the court has allowed this. And I think there's a really good reason for that, which is if someone in ordinary civilian life isn't happy with their medical care, they can walk down the street and go to a different doctor or go to a different hospital. But for someone in prison, these lawsuits are often the only means they have to vindicate their rights. And the court has used this term that lawsuits for prisoners are preservative of many other rights. And so I think I agree with you that in a normal workers' compensation scheme, that backstop might be necessary. But for individuals who've been incarcerated and who lose a lot of their political and civil rights, I think this is a very important backstop. I'm just curious. Is your client still in jail or prison? He's out. And I think one note that's interesting, we have this in our reply brief. So he, I think which just sort of underscores the flaws of the IACA. Of course, our argument doesn't depend on this. But he actually, he filed a timely IACA request before being released. And he alleges in a declaration, I think it's docket 107, that the prison simply never gave him the physical that was required, which is needed to process it. So I think even in this very case, I think his situation sort of shows why this is not actually an effective remedy. Okay. We will give you your full rebuttal time, Mr. Harris. Thank you. Thank you. Mr. Shaw. Good afternoon. Good afternoon. May it please the court, Whaley Shaw for the defendants' appellees. I'd like to begin with the IACA first, but I also want to make sure that before I end, I get to the other two alternative remedies that we discussed in our briefs. The Supreme Court held in Demko that Congress's intent to make the IACA exclusive was so strong that it precluded a broad statutory remedy that did not even exist at the time the IACA was enacted. And Demko was a pre-Bivens case, right? Exactly. That's right. Demko held that the IACA was a comprehensive remedial scheme to address injuries and that courts should not recognize exceptions to that scheme absent specific legislation to that effect. If Congress's intent to make the IACA exclusive was so strong as to preclude a later enacted remedy created by Congress, it necessarily follows that the IACA precludes a judicially created damages remedy. The dominant theme of the last 35 years of Bivens jurisprudence has been that where Congress has acted, courts must defer. And as this court said in Jones v. TVA and Downey v. City of Middleburg, the relevant question, the relevant inquiry is whether Congress has created a comprehensive administrative scheme that governs the area involved. Demko answers that precise question, as this court has already recognized in three unpublished decisions. Because the IACA is a comprehensive administrative scheme, that governs the area involved. What do you say to his point about deterrence? I think deterrence is a rationale that's been cited for the Bivens remedy, but I think to fully appreciate how the Supreme Court approaches deterrence, I think you have to look at the actual reasoning and the facts and holdings of its cases. So if you look at cases like Bush and Schweiker, the court was very clear in those cases that it assumed that the alternative remedy that was available was not as effective either in terms of deterrence or in terms of compensation as a Bivens remedy. It nonetheless held that those remedies were adequate to preclude a Bivens remedy. I also just wanted to mention the two alternative remedies that we discussed in our briefs, the availability of the administrative procedure and the suits for injunctive relief in federal court. I think this case actually very aptly demonstrates how those remedies provide inmates an opportunity to bring their grievances before a court and bring any wrongdoing to light. In this case, Mr. Koprowski actually did pursue administrative remedies and also sought injunctive relief in the district court. The district court actually ruled on the merits of his request for injunctive relief, not based on the existence of a Bivens remedy, but actually ruled on his likelihood of success on those claims on the merits. And the district court decided that the evidence did not support Mr. Koprowski's claims of insufficient medical treatment. So I think at least in this case, certainly Mr. Koprowski was fully able to air his constitutional claims. And I think the same would be true of other cases in which prisoners feel that they are being deprived of some medical procedure to which they are constitutionally entitled. You certainly would agree that an administrative procedure, which may at some point result in an ex parte young injunction in court, but an administrative procedure has far fewer procedural safeguards. You don't have jury trial. You don't have punitive damages. I mean, I know your argument is that Congress can so provide, but I mean, it's far short of a federal trial where you have the ability to get, like I say, a jury, punitive damages, and probably exposed to a much greater degree any unconstitutional conduct by prison officials. Well, I don't see why these remedies would be inadequate to expose unconstitutional conduct. But specifically with regard to your points about punitive damages, a jury trial, the availability of individual liability against government officials, I think the Supreme Court precedent makes absolutely clear that those are no longer requirements, if they ever were, for precluding a preventive remedy. So if you look at cases like Bush v. Lucas, Stryker v. Chalicki, this court's cases in Rainer v. Union Carbide, Left Fork Mining, and I can name many others, all of those cases involve schemes that did not involve jury trials, punitive damages, or liability against individual officers. Yeah, but some of those schemes were far more involved than here, one could argue. There certainly is a range, but I don't think that the IACA is categorically less comprehensive than, say, the Mining Act that was at issue in Left Fork Mining. And I would specifically call the court's attention to two cases, Rainer v. Union Carbide in this circuit, and Richmond v. Potter, an unpublished decision of the D.C. Circuit. In both of those cases, the courts held that a Bivens remedy was precluded by a no-fault compensation scheme. So in Rainer v. Union Carbide, that was the Price-Anderson Act, a no-fault compensation scheme for nuclear accidents. And in Richmond v. Potter, that was the Federal Employees' Compensation Act, which is a no-fault workers' compensation scheme for federal employees that is very much like the IACA. And in both of those cases, because those are no-fault schemes, there was no opportunity for the plaintiffs in those cases to raise their grievances about unconstitutional conduct, or for that matter, any other wrongful conduct through those schemes. And nonetheless, the courts in those cases held that those schemes were adequate to preclude a Bivens remedy. Tell me this. You know, you're asking us to create a circuit split, aren't you? You've got three published opinions in other circuits that say there is a Bivens remedy, and you're wanting us to go the other way. Now, tell me what's wrong with Begola and the other cases, why we shouldn't follow them. Sure. Well, I would just point out first that there already is a circuit split. Again, the circuit has already issued three unpublished decisions. They're unpublished, so they're not precedential. Absolutely. That's correct. Otherwise, we couldn't overrule our own circuit if they were published. Right. That's correct. But in terms of what Begola got wrong, I think the most important thing that Begola failed to take into account is the Supreme Court's decision in Demco, which, again, established that the IACA is a comprehensive remedial scheme to address injuries and that courts should not create exceptions to that scheme, absent specific legislation to that effect. Now, Begola cited— Well, look, I like that Demco is just, hey, one tort remedy can displace another tort remedy, but I don't see Demco saying a tort remedy displaces a constitutional remedy. I would dispute that there is a categorical difference between those types of remedies, at least for purposes of the Bivens analysis. I would point out that the plaintiff in this case has not identified a single instance in which courts have held that a statutory scheme precludes an FTCA remedy but not a Bivens remedy. And as far as I'm aware, in every single case, those answers have gone hand in hand. So that is the case, for example, for the Federal Employees' Compensation Act, the Postal Reorganization Act, the Civil Service Reform Act, the Administrative Procedures Act, and I'm sure there are more examples of which I'm not aware. So, again, I would say that there's not a categorical difference between those two. The relevant question is not whether Congress has specifically declared its intent to preclude a constitutional damages remedy. The question is the comprehensiveness of the remedial scheme. Again, the language that this Court has used is that the inquiry is limited to whether Congress has enacted a comprehensive administrative scheme governing the area involved. And that's something that's a question that's independent of whether the particular remedy at issue is for torts or constitutional torts. Why did Carlson allow a Bivens claim then? You had the FTCA. I think Carlson is very different from this case. And the most important reason is that Carlson's principal rationale was the intent of Congress. Carlson said that it was crystal clear in the Supreme Court's words, it was crystal clear that Congress intended the FTCA and Bivens to be complementary remedies, and it drew support from the legislative history of the statute. So that is very different from this case. And, in fact, the various factors regarding, you know, the existence of jury trials and punitive damages and so forth, those factors were all cited in support of the Court's conclusion about legislative intent. There's no indication that those were intended to be freestanding factors. I also just wanted, I guess, just one more point. I mean, the FTCA is a broad statutory remedy. The IACA is a very specific scheme that was enacted to address injuries in a particular field, and it drew on a model of workers' compensation statutes for which there is ample precedent for their exclusivity. So Congress was certainly drawing on this tradition. So that is another significant difference with the FTCA. Well, what about Mr. Harris's point that even in workers' cop schemes, there are often exceptions for intentional torts and that workers' cop schemes do not bar a claim by a plaintiff if there was a claim of an intentional tort? Yes. So I have a couple of responses to that. First of all, I don't think that the claims that are actually before this Court, so those are the claims relating to his medical treatment, as opposed to the claims that the district court found were not administratively exhausted, I don't think that those rise to the level of intentional torts. They have to rise to deliberate indifference if he has a claim. Right. So the standard, as the Supreme Court has announced, the standard for a deliberate indifference claim is something akin to recklessness. It is not an intentional tort. And I would also point out that under Kentucky workers' compensation law, for example, I guess the intentional tort exception requires not just some knowledge of the risk of harm but actually a deliberate intent to injure the employee, and at least under Kentucky workers' compensation law, that is the only time when that exception comes into play. It seems like the more relevant answer is are there exceptions to the IACA? Put Bivens to the side. Right. Are there exceptions to the IACA for intentional torts, or what's the law on that? Yes. I think I'm not aware of a specific intentional tort exception to the IACA, but, again, I don't think that's an issue in this case. I think it is very clear from this Court's holding in Wooten that the IACA does extend both to the work-related injury and to medical treatment after the fact, and that's comparable to other statutes such as the Federal Employees' Compensation Act. We cite a case in our briefs called McCall in which there was a civilian employee who was employed at a military base who was injured and then actually received medical treatment at the military hospital there. So the holding in that case was that the FECA was her exclusive remedy not only for the original injury she suffered, but also for the negligent treatment she suffered at the military base. Right, for the negligence, for medical malpractices. But what about intentional? I mean, this deliberate indifference, where is the approval? Right. Again, I would strongly dispute that this is an intentional tort. However, I think that the claims, at least in this case, just seem to be a sort of medical malpractice with an elevated standard. Are you saying there's going to be a different rule for the next case if there's evidence it's an intentional tort? No, I'm not saying that. I'm just trying to sort of flag an issue that's not necessarily presented in this case. But I guess I'm not aware of an intentional tort exception. Are there many Bivens-FECA claims, F-E-C-A? Is there a lot of case law in that area? That seems like a good, useful analogy. In terms of, well, as I mentioned— Is FECA exclusive vis-a-vis Bivens? Yes, it is. The only court that I'm aware that has discussed that issue or considered that issue is the D.C. Circuit. And as I mentioned, actually in two cases, Richmond v. Potter and Briscoe v. Potter, the Supreme Court held that the FECA does preempt Bivens claims. And I would argue that— Just to make sure I understood, you're saying the U.S. Supreme Court said that? No, I'm sorry, the D.C. Circuit. Was that a published or unpublished? Unpublished decision. And the Seventh Circuit didn't just say something going the other way? No? No, I'm not aware of a holdup. So all you know of is this unpublished D.C. Circuit decision on FECA, okay. Right. Okay. And just—I guess just one more point I wanted to hit. So my brother has mentioned language in Minecci v. Pollard saying something to the effect that the alternative remedy must be roughly similar in effect. And I certainly don't think that is controlling here. And I think the best explanation for that language is that the remedies that were at issue in Minecci v. Pollard were state law remedies. So the separation of powers concerns that have been the primary driving force behind the Supreme Court's Bivens jurisprudence were not at issue in that case. And so we don't get the same language in that case as is present in, for example, again, Bush v. Stryker. I'm sorry, Bush v. Lucas, Schweiker v. Chalicki, and so forth. I guess one more point on Schweiker v. Chalicki. My brother said that that was a case in which Congress had paid extensive attention to the potential due process problems. And that is certainly something that was cited by the Supreme Court. But I would also direct this court to its decision in Geiss, G-I-E-S-S-E. And that was a very similar case to Schweiker that came up in the Sixth Circuit that involved the Medicare Act. And there was no similar discussion of congressional consideration in that case. So just to close, I would point out that the last 35 years of Bivens jurisprudence tell us that the scope of available remedy is appropriate, is extremely narrow. I think in light of the Supreme Court's holding in Demko regarding the exclusivity of the IAC, I think that the IAC does not fall within that range. With that, we ask that the judgment of the court below be affirmed. Okay. Thank you, Mr. Shaw. Mr. Harris, you have your full rebuttal time. Thank you, Your Honor. Tell us why Demko doesn't control, as Mr. Shaw says. I think Demko doesn't control because, A, it was decided before Bivens. So, of course, the court could not have in any way been talking about whether it's holding for close to Bivens' claim. But, again, I think even more to the point, Demko doesn't control because all Demko held is that the IACA displaces a regime of common law torts sounding in negligence. So that's an apples-to-apples comparison. And I think all the court was getting at was that the specific controls the general. And when you have these two comparable negligence-accident-based regimes, the court said, we're going to go with the IACA. But IACA to Bivens, as the Seventh Circuit held in Bogola, is an apples-to-oranges comparison.  Is there any Supreme Court case where FTCA was displaced by another statute and yet Bivens was still allowed? I don't. I mean, again, unless with the caveat of this. Your friend on the other side made it sound like there were some other cases where it's FTCA versus some other statute. And I'm just asking whether where the FTCA was displaced, as it was in Demko, and I'm just saying, are any of those ones where the U.S. Supreme Court, nonetheless, said we'll imply or infer a Bivens remedy? I don't have that because the Eighth Amendment is one of the few areas where the Supreme Court has actually allowed a Bivens claim at all to go forward. So, you know, one quick note about Meneci. So my friend on the other side said that Meneci was limited to this context of state law remedies. But unquestionably, the court in Meneci was applying Wilkie and was applying Schweiker. And I think front and center in that opinion is a discussion of deterrence and compensation. And so I think Meneci is very helpful on both points. And I just I just close by saying what what we're asking here is actually pretty narrow in the big scheme of things. So since Carlson, the whole manner of prison torts have all been have all been susceptible to Bivens claims. If there's a tort followed by a deliberate indifference to the inmates medical needs. So that would happen if someone is injured on the basketball court. If someone gets in a fight with another prisoner, if someone's injured through an accident in the cafeteria. All we're saying is that in the universe of prison torts, that we're allowed to bring the small slice that will arise out of work related accidents. And to address special factors for a second, I think the other side both ways, doesn't it? I'm sorry, that point cuts both ways. If it's a small group, it's a small group. You're not doing as much harm, but there also means there's not that many victims. It kind of cuts both ways, I guess I would say. Well, but again, which I think goes to the point about why the Eighth Amendment is needed as a backstop. And I think special factors. So the other side claims that this might lead to problems with security problems with recruiting employees. It might deter work programs. But I think when you look at the circuits in which the circuits that have recognized these claims for a combined 43 years, they don't point to anything concrete saying that the Ninth Circuit is unable to recruit prison guards or isn't using work programs. And that's because of qualified immunity. And so the Supreme Court said in Carlson that qualified immunity is an, quote, adequate protection against meritless claims. And so in decisions such as, I see my time is up. Can I? You may finish. So when you look at decisions such as Filarski and the Supreme Court's recent writings on qualified immunity, the court is addressing the exact issues that the appellees are raising in their special factors analysis. And the whole purpose of qualified immunity is to ensure that those concerns don't come to pass. So if there are no further questions, we encourage this court to follow the three other circuits and reverse. Okay. Thank you, Mr. Harris. And certainly, speaking for myself, I'd like to thank both of you today for an excellent briefing, for, you know, very, very strong arguments. That certainly helps the court as we consider what is a very interesting, challenging matter. And, Mr. Harris, we want to thank you for taking this case on, you and your firm, as I understand it, on a pro bono basis. That's obviously of great benefit to Mr. Kropowski, but also to the system at large. So thanks to both of you, and we appreciate your arguments today. Thank you.